```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF OKLAHOMA

JOHN JOSEPH LANE,                  )
                                   )
               Plaintiff,          )
                                   )
                                   )   Case No. CIV-19-236-RAW-KEW
                                   )
COMMISSIONER OF THE SOCIAL         )
SECURITY ADMINISTRATION,           )
                                   )
               Defendant.          )
```

**REPORT AND RECOMMENDATION**

Plaintiff John Joseph Lane (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 43 years old at the time of the decision. He has a high school education and worked in the past as an arch welder. Claimant alleges an inability to work beginning on January 1, 2015, due to limitations resulting from anxiety, depression, violent tendencies, insomnia, and claustrophobia.

## Procedural History

On June 14, 2016, Claimant protectively filed for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act and an application for supplemental security income benefits pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon

reconsideration. On July 2, 2018, ALJ Lantz McClain conducted an administrative hearing from Tulsa, Oklahoma, at which Claimant was present and participated. On August 10, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on May 19, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with nonexertional mental limitations.

### Errors Alleged for Review

Claimant asserts the ALJ committed error by (1) failing to properly evaluate and weigh the "other" medical source evidence, (2) failing to properly consider his Tourette's disorder at step two and step four; and (3) finding he could perform other work at step five based upon the RFC.

### Evaluation of "Other" Source Evidence

In his decision, the ALJ found Claimant suffered from severe impairments of major depressive disorder and anxiety disorder (Tr. 13). He determined Claimant could perform a full range of work at all exertional levels, but with nonexertional mental limitations.

4

Claimant could perform simple and repetitive tasks and relate to supervisors and co-workers only superficially. He could not work with the public. (Tr. 15).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of packaging machine operator, hardware assembler, and machine cleaner, all of which the ALJ found existed in sufficient numbers in the national economy. (Tr. 19). As a result, the ALJ concluded Claimant was not under a disability from January 1, 2015, through the date of the decision. (Tr. 20).

Claimant argues the ALJ failed to properly evaluate and weigh the mental RFC assessment completed by his counselor, Gay Peterson, MHR. As noted by the ALJ in the decision, Ms. Peterson saw Claimant for the first time on August 19, 2016, as part of a counseling program through Okmulgee Indian Clinic. She assessed him with anxiety, other depressive episodes, and assigned him a Global Assessment of Functioning ("GAF") score of 63. (Tr. 16,343-47). He returned in November of 2016 with an anxious and angry mood, depressed thought content, but otherwise his mental status was normal. A screen for depression indicated severe depression. Claimant was assessed with anxiety disorder, unspecified and major depressive disorder (recurrent, moderate) and a GAF score of 60. (Tr. 16, 348-57). He retained his diagnoses and GAF score in December of 2016. (Tr. 16, 358-60). Ms. Peterson continued to see

Claimant regularly through April of 2018. Other than an additional diagnosis for Tourette's disorder, which was noted to be improved in April of 2018, there were no significant changes in Claimant and his GAF score remained the same. (Tr. 16-17, 422-30, 437-39, 446-47, 455-56, 464-66).

The ALJ also discussed Claimant's treatment with Christopher Puls, M.D., in conjunction with his treatment with Ms. Peterson at the Okmulgee Indian Clinic. He referenced Dr. Puls psychiatric diagnostic evaluation of Claimant on October 26, 2017. At that time, Dr. Puls diagnosed Claimant with anxiety disorder and major depressive disorder (recurrent, moderate) and a GAF score of 60. (Tr. 17, 431-36). In November of 2017, Dr. Puls included a diagnosis of Tourette's disorder because of motor tics of Claimant's face and neck, which Claimant reportedly had experienced on a long-term basis. (Tr. 17, 440-45). However, by February of 2018, Claimant's tics had improved as had his depression. His GAF score remained 60. (Tr. 17, 457-463).

Ms. Peterson completed a mental status form and a mental RFC assessment of Claimant on June 29, 2018. As discussed in detail by the ALJ, she determined Claimant would have at least occasional difficulty in all the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaption, and in many cases finding Claimant experienced frequent or constant problems. (Tr. 17-18, 469-472).

As a counselor, Ms. Peterson is not considered an "acceptable medical source," but is considered an "other source." *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *2 (Aug. 6, 2006); *see also Akers v. Colvin*, 556 Fed. Appx. 754, 757 (10th Cir. 2014) (noting a counselor is not an acceptable medical source). Although "[o]nly 'acceptable medical sources' can provide evidence to establish the existence of a medically determinable impairment, . . . only they can provide medical opinions, and only they can be considered treating sources, . . . [t]he regulations . . . also contemplate the use of information from 'other sources,' both medical and non-medical." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (citations omitted). When considering "other source" evidence, the ALJ should still explain the weight given to opinions from other sources, but such an explanation "is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Keyes-Zachary*, 695 F.3d 1156, 1163-64 (10th Cir. 2012), quoting Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 ("T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning . . .").

The ALJ noted Ms. Peterson's findings on the mental RFC assessment indicated Claimant "could not work and had severe and extreme limitations." He determined Ms. Peterson's assessment was

entitled to "no weight," because the treatment notes from Ms. Peterson and Dr. Puls were not consistent with the limitations included on the assessment. The ALJ noted that their treatment notes "showed [Claimant's] basic cognitive abilities were preserved." (Tr. 18).

It is clear from the decision that the ALJ determined the opinions included on the mental RFC assessment by Ms. Peterson were inconsistent with not only her treatment notes, but the treatment notes of Dr. Puls, and he assigned no weight to Ms. Peterson's opinions. Because the ALJ's reasoning is clear from his discussion of the evidence, this Court finds no error with the ALJ's consideration of Ms. Peterson's opinions.

### Step Two and Step Four Findings

Claimant also argues the ALJ erred by not including his Tourette's disorder as a severe impairment at step two and then failing to account for it with limitations in the RFC assessment at step four.

The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See*, *e.g.*, *Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the

8

condition), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007) (the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 2000 WL 1028250, at *1 (10th Cir. 2000) (disability determinations turn on the functional consequences, not the causes of a claimant's condition).

To the extent Claimant contends his Tourette's disorder should have been included as a severe impairment at step two, where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Brescia v. Astrue*, 287 Fed. Appx. 626, 628-629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id.*, quoting *Hill v. Astrue*, 289 Fed. Appx. 289, 291-292 (10th Cir. 2008).

The ALJ determined Claimant suffered from severe impairments of major depressive disorder and anxiety disorder. (Tr. 13). He specifically considered Claimant's Tourette's disorder, noting the

9

diagnosis and Claimant's testimony that he believed it was caused by his anxiety. (Tr. 15, 45-46). The ALJ also discussed Claimant's Tourette's disorder when summarizing the evidence in the RFC assessment. He recognized the diagnosis by Dr. Puls in November of 2017, and Claimant's report that his motor tics had improved by early 2018. He further discussed Ms. Peterson's notation in April of 2018 that Claimant's Tourette's disorder was improved. (Tr. 17, 440-45,448-54, 457-63, 464-66). The ALJ concluded that the Claimant's RFC was supported by the treatment notes from Dr. Puls and Ms. Peterson, as well as progress notes from his physician George Jennings, D.O. (Tr. 17).

The ALJ's decision demonstrates that he did not simply disregard Claimant's Tourette's disorder when assessing the RFC. He included limitations in the RFC limiting Claimant to simple and repetitive tasks, to superficial interaction with supervisors and co-workers, and to no work with the public. (Tr. 15). Moreover, Claimant fails to suggest what additional limitations associated with Tourette's disorder were omitted from the RFC. *See Kirkpatrick v. Colvin*, 663 Fed. Appx. 646, 649 (10th Cir. 2016) (rejecting argument that certain limitations were omitted from the RFC because "[claimant] doesn't explain how [the] restrictions [included in the RFC] fail to account for his [vision] defects"). The Court finds no error by the ALJ at steps two or four of the sequential analysis.

**Step Five Determination**

Claimant argues that because the hypothetical question to the VE did not address his Tourette's disorder, it could not form the basis for the VE's testimony that Claimant could perform other jobs which existed in significant numbers in the national economy.

"Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991). In positing a hypothetical question to the VE, the ALJ need only set forth those physical and mental impairments accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). The hypothetical questions need only reflect impairments and limitations borne out by the evidentiary record. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). Defendant bears the burden at step five of the sequential analysis. *Hargis*, 945 F.2d at 1489.

This Court finds no error in the ALJ's questioning of the VE. The hypothetical questions to the VE included those limitations found to exist by the ALJ and included in the RFC. *See Qualls*, 206 F.3d at 1373 (finding an ALJ's hypothetical questioning of the VE provided an appropriate basis for a denial of benefits because the question "included all the limitations the ALJ ultimately included in his RFC assessment.") (citation omitted).

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 31st day of July, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE